IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAVID M. WILSON,

                        Plaintiff,                      OPINION AND ORDER

v.

                                                    18-cv-360-wmc

MICHAEL DITTMAN - WARDEN,
MEREDITH MASHAK - HSU MANAGER,
MS. FRY - UNIT MANAGER, CO ARNOLD,
CO DITTMAN, CO ZAHRTE, SGT. CHATMAN,
SGT. BRIANNA NOWAK, and CO AHLERS,

                       Defendants.

*Pro se* plaintiff David M. Wilson filed this civil action under 42 U.S.C. § 1983 challenging the adequacy of his medical treatment by employees of Columbia Correctional Institution ("Columbia"). Plaintiff specifically alleges that several correctional officers and sergeants violated his Eighth Amendment and state law rights by handing him the wrong medications on several occasions, and their supervisors failed to correct their deficient practices. Since filing his complaint, Wilson has also filed a motion to amend his complaint to add additional allegations with respect to one defendant (dkt. #23), and a motion for preliminary injunction (dkt. #21). The court will grant plaintiff's motion to amend and deem his allegations in that motion a supplement to his complaint. Having reviewed Wilson's complaint and supplemental allegations for purposes of screening under 28 U.S.C. § 1915A, however, the court concludes that while it may be possible for Wilson to articulate constitutional and state law claims, he will be required to amend his complaint that corrects the deficiencies described in this order if he wants to proceed with this lawsuit. The court is also denying Wilson's motion for a preliminary injunction.

# ALLEGATIONS OF FACT[1]

### A. Parties

Plaintiff David M. Wilson is currently incarcerated at Columbia, where the events comprising his claims occurred and where defendants were employed. He names nine defendants: Warden Michael Dittman; Health Services Unit ("HSU") Manager Meredith Mashak; Unit Manager Ms. Fry; Correctional Officers ("CO's") Arnold, Dittman, Zahrte and Ahlers; and Sergeants Chatman and Nowak.

### B. Incidents of Receiving Incorrect Medication

It is unclear what condition or conditions Wilson suffers from, but he receives certain medications throughout the day. During the evening medication pass on January 22, 2016, CO Arnold came to Wilson's cell and gave him two unknown pills. Wilson corrected Arnold, who then retrieved the correct medication card and gave him his medications. On January 25, 2016, CO Dittman gave Wilson the wrong medication during evening pass. Wilson corrected him, and Dittman gave him the correct medication. On January 26, 2016, the same thing happened with CO Zahrte. On February 20, 2016, Arnold repeated his mistake from January 22, but it appears that Wilson corrected him that time as well.

On March 4, 2016, Wilson was being held on temporary lock-up status, which is a

---

[1] Since plaintiff is proceeding *pro se*, the court construes the allegations in plaintiff's complaint generously, drawing reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

restrictive status typically imposed on prisoners who are under investigation pending a conduct report. Sergeant Chatman came to Wilson's cell and placed two medication bubble packs in his cell's trap door. Wilson noticed that they were not his medications, and he yelled to Wilson that they were not his. Chatman responded "you are a Wilson, so I got it half right." (Compl. (dkt. #1) ¶ 5.) Wilson has not alleged whether Chatman corrected his mistake.

On August 31, 2017, Sgt. Nowak gave Wilson a number of pills during the evening medication pass. Wilson swallowed all of the pills with water, and then Wilson noticed that one of the medications was not his. Wilson told Nowak about the mistake, and she responded that she had never done that before. Nowak told him to sit down and said she would call a nurse. Nowak called the Health Services Unit ("HSU") and talked to a nurse, who said that Wilson would be okay. Wilson claims that the nurse said this to Nowak without reviewing his medical file. At about 10:40 p.m. that night, Wilson started having painful stomach cramps, diarrhea and headaches. He alerted CO Kratz that he had taken the wrong medication, and Kratz responded that he would inform the captain on duty. Later, Kratz informed Wilson that Capt. Boodry told him to monitor Wilson throughout the night, and a nurse would see him in the morning.

On December 31, 2017, Wilson was in line for a medication pass in the HSU, and CO Ahlers pulled out Wilson's medication card for gabapentin, one of Wilson's medications. While Wilson told her he was supposed to take gabapentin at that point, Ahlers disagreed. Wilson told her to look at the directions on the medication card, and when Ahlers looked at it, she took a marker and changed the time he was supposed to take

3

it. Wilson later filed a complaint about what happened.

### C. Wilson's Complaints

Wilson complained about these incidents to his unit manager and the HSU Manager. Specifically, on January 20, 2016, Wilson wrote to HSU Manager Mashak, complaining that the CO's were delivering the wrong medication, and she responded that the CO's have all been through training. However, when Wilson asked a non-defendant CO about his training, that CO responded that they received a few pages to read, but mainly, they learned how to pass out pills on the job. On January 25 and February 20, Wilson wrote to Unit Manager Fry about getting the wrong medication, and she responded that she would look into the issue and make sure it did not happen again.

Finally, Wilson claims that Warden Dittman was made aware that there was a pattern of CO's giving prisoners the wrong medication, but he failed to do anything to address the issue. However, he does not allege when Dittman was made aware of this problem.

OPINION

The court understands plaintiff to be pursuing Eighth Amendment deliberate indifference and Wisconsin negligence claims against all eight named defendants. However, the court must dismiss his complaint since it does not satisfy the requirements of Federal Rule of Civil Procedure 8. Rule 8 requires "'short and plain statement of the claim' sufficient to notify the defendants of the allegations against them and enable them

to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To state an Eighth Amendment claim, plaintiff must allege facts supporting an inference that his medical treatment demonstrates "deliberate indifference" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). "Serious medical needs" include (1) life-threatening conditions or those carrying a risk of permanent serious impairment if left untreated, (2) withholding of medical care that results in needless pain and suffering, or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). "Deliberate indifference" encompasses two elements: (1) awareness on the part of officials that the prisoner needs medical treatment and (2) disregard of this risk by conscious failure to take reasonable measures. Under Wisconsin law, the elements of a cause of action in negligence are: (1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty, which involves a failure to exercise ordinary care in making a representation or in ascertaining the facts; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 307 (1987).

The first problem with plaintiff's complaint is that he has not alleged any facts related to his medical condition. As such, even accepting that he was on a regimen of medications in 2016 and 2017, the court cannot reasonably infer that plaintiff was

suffering from a serious medical condition because plaintiff has not actually identified those medications. His mention of the medication gabapentin does not shed much light on this question, since this medication may be prescribed at varying dosages to treat a host of conditions of different degrees of severity. *See* Gabapentin, https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details/list-conditions (last visited Oct. 11, 2019) (including among the list of conditions gabapentin treats: nerve pain, partial seizures, neuropathic pain, "change of life" signs, acute pain following an operation, extreme discomfort in calves, alcoholism, and essential tremor).

Even accepting that plaintiff suffers from a serious medical need, his next problem is that defendants' responses appear to amount to inadvertent error, negligence, or gross negligence, all of which are insufficient to state an Eighth Amendment claim. *See Vance v. Peters*, 97 F.2d 987, 992 (7th Cir. 1996). There may be some circumstances in which a prison official's administration of the wrong medication to a prisoner supports an Eighth Amendment claim. For example, a prisoner may state a claim if he alleges that a prison official provided the wrong medication intentionally, routinely or with such carelessness that it appeared the official was failing to take reasonable precautions when distributing medications. *Thomas v. Wall*, No. 16-cv-166-bbc, 2016 WL 3006834, at *1-2 (W.D. Wis. May 23, 2016). That said, a single instance in which an official provides the wrong medication card or misreads the proper dosage amount would not support such a claim. *Robbins v. Waupun Corr. Inst.*, No. 16-cv-1128, 2016 WL 5921822, at *3 (E.D. Wis. Oct. 11, 2016).

With respect to CO's Arnold, Dittman, and Chatman, plaintiff's problem is two-fold. Not only does it appear that each of these defendants simply made mistakes in handling him the wrong medication, but plaintiff did not actually take the wrong medication. Rather, plaintiff corrected them and received the proper medication. Since plaintiff does not allege facts suggesting that any of these defendants insisted he take the wrong medication or refused to provide the correct medication once he alerted them to their mistake, it would be unreasonable to infer that any of them acted with deliberate indifference.

The circumstances with CO Nowak are different in that plaintiff did actually consume another prisoner's medications. However, plaintiff's allegations suggest that this, too, was a mistake on Nowak's part. Moreover, plaintiff also alleges that Nowak acknowledged that she made a mistake and called the HSU almost immediately to find out what she should do to correct her mistake. When the nurse advised Nowak that plaintiff would probably be okay, Nowak, as a non-medical professional, was entitled to defer to that nurse's professional judgment. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

As for Ahlers, it may be reasonable to infer that her handling of his gabapentin prescription was reckless, since plaintiff alleges that she doctored his medication card without consulting with any medical professionals. However, given that plaintiff has provided no allegations suggesting that a lapse in his gabapentin medication would actually cause him harm, it would be unreasonable to infer that her decision to not allow him access to that medication until a later time in the day constituted deliberate indifference.

7

Finally, the court understands plaintiff to be pursuing claims against Fry, Mashak and Warden Dittman for failing to maintain reasonable procedures to prevent plaintiff from receiving incorrect medication. While § 1983 does not recognize claims on the theory of supervisory liability, supervisory defendants may be liable under the Eighth Amendment if the supervisor "directed the conduct causing the constitutional violation, or . . . it occurred with [his] knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001). However, as for Fry and Mashak, plaintiff alleges that he complained to them in January and February of 2016, about events that took place in his unit. Yet the next time plaintiff received the wrong medication was in March of 2016, when plaintiff was being held in restrictive housing. Since plaintiff does not allege that Fry or Mashak had reason to believe that CO's in restrictive housing may be providing medication improperly, they cannot be held accountable for Sgt. Chatman's mistake. The next two instances when plaintiff received the wrong medication occurred well over a year later, in August and December of 2017. Given this significant lapse of time with no apparent instance in which plaintiff reported continued problems with CO's providing him the wrong medication, it would be unreasonable to infer that these defendants were aware of CO misconduct and failed to respond appropriately.

Furthermore, with respect to Warden Dittman, plaintiff has not alleged that he knew about or was involved in the alleged violations. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisory role of others). While plaintiff includes the conclusory allegation that Dittman learned that CO's were giving him the wrong medication, plaintiff has not alleged *when*

8

Dittman learned about it. As such, it would be unreasonable to infer that he condoned or allowed their misconduct to continue in a way that caused plaintiff to receive the wrong medication.

Therefore, if plaintiff wants to proceed on his claims in this lawsuit, he will need to file an amended complaint that provides additional allegations supporting an inference that his medical condition and need for medications constitutes a serious medical need, whether he actually suffered any negative ramifications from not receiving his medication from Ahlers, whether Fry or Mashak knew that CO's were continuing to make medication mistakes between February and March of 2016 and August of 2017, and exactly when Warden Dittman was made aware about the mistakes the COs were making in providing his medications. As for defendants Arnold, Dittman and/or Chatman, unless plaintiff has omitted facts suggesting that they acted with reckless disregard of the possibility that he would take the wrong medication -- and not with negligence -- he should omit these defendants from his proposed amended complaint.

Plaintiff should draft his proposed amended complaint as if he is telling a story to someone who knows nothing about his situation. This means that he should explain: (1) what happened to make him believe he has a legal claim; (2) when it happened; (3) who did it; (4) why; and (5) how the court can assist him in relation to those events. Plaintiff should set forth his allegations in separate, numbered paragraphs using short and plain statements. After he finishes drafting his amended complaint, he should review it and consider whether it could be understood by someone who is not familiar with the facts of

his case. If not, he should make necessary changes.

Finally, the court notes that Wilson has submitted several declarations in which he provides a sworn statement with respect to a few allegations from his complaint in each. (*See* dkt. ##3-9.) Wilson should stop this practice. He did not need to submit a declaration with respect to the allegations in his complaint because his complaint was sworn under penalty of perjury. Going forward, if Wilson needs to submit evidence in the form of his own declaration, he may do so, but he should submit all of his sworn statements in one declaration instead of many.

### III. Motion for Preliminary Injunction (dkt. #21)

Finally, plaintiff file a motion for preliminary injunctive relief, seeking an order prohibiting correctional officers from handing out medications. However, plaintiff's motion -- which is formatted as a proposed preliminary injunction order from the court -- does not comply with this court's procedures for obtaining preliminary injunctive relief, a copy of which will be provided to plaintiff with this order. Under these procedures, a plaintiff must file and serve proposed findings of fact that support his claims, along with any evidence that supports those proposed findings. Plaintiff has neither submitted proposed findings of fact nor cited any evidence to support those findings.

Even if plaintiff's motion was not flawed on its face, it is denied on the merits at this time. To prevail on a motion for a preliminary injunction, plaintiff must show: (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted. *Lambert v. Buss*,

498 F.3d 446, 451 (7th Cir. 2007). Since plaintiff has yet to satisfy the requirements of Rule 8, it follows that he has not yet shown a likelihood of success on the merits of his claims.

ORDER

IT IS ORDERED that:

1) Plaintiff David Wilson's complaint is DISMISSED without prejudice for failure to meet the requirements of Federal Rule of Civil Procedure 8.

2) Plaintiff may have until **November 1, 2019, to submit an amended complaint that meets the requirements of Rule 8. If plaintiff fails to respond by that deadline, then this case will be dismissed with prejudice for failure to prosecute.**

3) Plaintiff's motion to amend complaint (dkt. #23) is GRANTED.

4) Plaintiff's motion for preliminary injunction (dkt. #21) is DENIED.

Entered this 11th day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge