IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

DAVID M. WILSON,

                Plaintiff,

v.

MICHAEL DITTMAN, SGT. CHATMAN,
and CO AHLERS,

                Defendants.

OPINION AND ORDER

18-cv-360-slc

_____

      Pro se plaintiff David M. Wilson, a prisoner at Columbia Correctional Institution who suffers from multiple sclerosis, is proceeding against defendants Chatman and Ahlers on Eighth Amendment deliberate indifference claims related to improper distribution of his medication. Specifically, Wilson alleges that Chatman gave him the wrong medication on March 4, 2016, and refused to correct the problem, while Ahlers denied him his pain medication on December 31, 2017, and altered his medication card. Wilson is also proceeding against defendant Dittman in his official capacity as Warden, seeking injunctive relief against the policy permitting correctional officers to dispense medication.

      Defendants filed a motion for summary judgment, contending that Wilson did not exhaust his administrative remedies on any of his claims. Dkt. 47. I denied that motion, but scheduled an evidentiary hearing, under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve factual disputes and legal issues pertaining to the exhaustion of Wilson's claims. Dkt. 57. The hearing was held, via Zoom, on November 5, 2021. Dkt. 69. From the evidence adduced at that hearing, along with the summary judgment record, I now find that defendants have met their burden of showing that Wilson did not properly exhaust his administrative remedies, for reasons set out below.

BACKGROUND

In support of their motion for summary judgment, defendants asserted that there was no record of Wilson having filed any inmate complaint about Chatman giving him the wrong medication on March 4, 2016. Defendants acknowledged that plaintiff had filed a complaint about Ahlers' alleged misconduct on December 31, 2017, but asserted that Wilson had not exhausted that claim either because there was no record showing that he appealed the rejection of that complaint to the Corrections Complaint Examiner, as required under Wisconsin's inmate complaint system.

In response, Wilson asserted, under penalty of perjury, that he had in fact filed a complaint about Chatman in March 2016 and filed an appeal, in March 2018, of the adverse decision on his complaint about Ahlers. Dkt. 53. Wilson averred he was in segregation when he wrote his complaint about Chatman, and that he had given it to a correctional officer to be put in the inmate complaint box. Likewise, he swore he mailed his appeal of his Ahlers complaint to the CCE in Madison. Wilson further averred that, after receiving no confirmation that either his March 2016 complaint or his March 2018 appeal had been received, he followed up by sending interview/information requests ("IIRs") to the Institution Complaint Examiner (ICE) at Columbia to see what happened to his complaint/appeal. According to Wilson, the ICE never responded to these IIRs. Wilson produced copies of the IIRs that he says he sent, dkt. 54, exhs. 1 and 3, but he did not produce copies of his March 2016 complaint regarding Chatman or his March 21, 2018 appeal regarding Ahlers.

Wilson further asserted that, after receiving no response from the ICE about his March 2016 complaint about Chatman, he filed another complaint, but that complaint was rejected as untimely. Wilson did not provide a copy of this complaint or the ICE's rejection, and no

2

record of such appears in Wilson's complaint history. Finally, Wilson provided an IIR dated January 31, 2021, in which he asked whether "in segregation, is the complaints now picked up at the cell door, by examiner." The ICE replied two days later, stating, "As of current procedures, yes." Dkt. 54, exh. 2. Wilson asserted that this change occurred because "too many complaints were coming up missing" when given to officers. Dkt. 53, at ¶ 5.

Finding that Wilson's representations were sufficient to raise a genuine dispute of fact as to whether he properly exhausted his administrative remedies, I denied defendants' motion, but scheduled a *Pavey* hearing. Dkt. 57. As noted above, I held the hearing on November 5, 2021. The testimony and evidence produced at the hearing largely overlapped with that developed on summary judgment. Wilson testified that he had left both his March 2016 complaint about Chatman and his March 2018 appeal of the rejection of his complaint about Ahlers outside his cell door, to be picked up by a correctional officer as he or she walked by.[1]

OPINION

Having had the opportunity to see and hear the witnesses testify, I am now persuaded that defendants have carried their burden to show that Wilson did not exhaust his administrative remedies with respect to any of the claims on which he has been granted leave to proceed in this lawsuit. Specifically, I find Wilson's testimony that he submitted the relevant inmate complaint and appeal by leaving them outside his cell for a correctional officer to pick up and deliver not credible for a number of reasons:

---

[1] Defendants presented a witness, Correctional Officer Noel Hill, who offered his opinion that Wilson had a character for untruthfulness, but I have not relied on his testimony in reaching my conclusions below.

First, Wilson presented no evidence to support his assertion that it was a "known fact" that, during the relevant time period, the correctional officers on the segregation units would not put inmate complaints into the examiner box. Wilson submitted an IIR indicating that the ICE was retrieving the complaints directly as of late January 2021, implying that the reason was that the correctional officers were not reliable. But the current ICE coordinator at CCI (Rae Boyer) testified that any change in procedure was in response to Covid lockdowns, which would not have occurred in March 2016 and March 2018. Thus, Wilson's assertion that prison staff routinely interfered with or failed to properly deliver inmate mail rests on nothing but his own speculation, which is not evidence. *See, e.g.*, *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled ... to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)).

Second, defendants produced records showing that between March 18, 2013 and July 8, 2021, Wilson filed 46 inmate complaints that were received and processed by the institution, and he appealed nine of those complaints to the CCE office. Dkts. 62, 64. In fact, on March 1, 2016, just days before he alleges he filed the complaint about Chatman, he filed -– and the institution received --- a complaint about a different officer, and on March 2, 2018, he filed a complaint about law library time. *Id*. Wilson presented no evidence to suggest that he filed any other complaints or appeals that were misplaced or lost except for those at issue in this lawsuit. Of course, there is always a first time, but the fact that Wilson successfully filed numerous complaints and appeals – including around the same time he allegedly filed his complaint and appeal in this case – casts further doubt on his claim that staff interfered with his submissions.

4

The only corroborating evidence that Wilson has produced to support his assertion that he provided his March 2016 complaint and March 2018 appeal to prison staff are the two IIRs inquiring about the status of his complaint/appeal, which he swears he sent to the institution complaint examiner but received no response. Little testimony about the IIRs was developed at the hearing. However, I agree with defendants that there are strong reasons to suspect that Wilson created these documents after the fact. First, there is nothing on the documents such as a stamp or response indicating that the ICE ever received them. Second, I am skeptical that Wilson would have made copies of those IIRs but not of his inmate complaint or appeal. Third, Wilson's own evidence shows that when he filed an IIR asking about complaint procedures on January 31, 2021, he received a response from the ICE two days later; in fact, his complaint history includes a number of IIRs to which staff had responded. *See, e.g.*, dkt. 62, exhs. 1000-107, 1000-123, 1000-125. Fourth, Wilson admitted on cross-examination that he is not always honest, having lied on at least one occasion to a correctional officer. Hearing Tr., dkt. #69, at 32:20-25. Fifth, there is not a shred of corroboration for Wilson's assertion that he filed a second, untimely complaint about Chatman that was rejected, which suggests a willingness by Wilson to embellish the record to save his claims.

Wilson would have the court believe that he properly submitted his alleged March 2016 inmate complaint, his alleged March 2018 appeal, followed by the two IIRs asking about them, but that somehow *each and every document crucial to this lawsuit* either got lost or was ignored. I don't believe this. Rather, from all of the evidence presented to the court, including Wilson's testimony and demeanor at the hearing, I find that Wilson did not file a March 2016 complaint or March 2018 appeal, but then created the IIRs later to make it seem as if he had. Accordingly, I find that Wilson did not properly exhaust his administrative remedies with respect to his claim

that Chatman gave him the wrong medication on March 4, 2016 or his claim that Ahlers denied him his pain medication on December 31, 2017. Finally, I agree with defendants that Wilson's various complaints about his medications as documented in his complaint history did not make plain that he was contesting a policy by the institution as opposed to individual actions. Accordingly, that claim is also dismissed for lack of exhaustion.

ORDER

IT IS ORDERED that plaintiff David Wilson's claims that (1) defendant Chatman gave him the wrong medication on March 4, 2016, and refused to correct the problem, (2) defendant Ahlers denied him his pain medication on December 31, 2017, and altered his medication card, and (3) for injunctive relief against defendant Dittman against the policy permitting correctional officers to dispense medication, are DISMISSED WITHOUT PREJUDICE for his failure to exhaust his administrative remedies. The clerk of court is directed to close this case and enter judgment in favor of defendants.

Entered this 28th day of March, 2022.

BY THE COURT:

/s/

_____

STEPHEN L. CROCKER
Magistrate Judge